IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRANDON BJORAKER and EMILY BJORAKER, his Wife,**<br><br>Plaintiffs,<br><br>v.<br><br>**DAKOTA, MINNESOTA & EASTERN RAILROAD CORPORATION; CANADIAN PACIFIC RAILWAY; ADVANCED TOWER SERVICES (2007), LTD.; MILLER TRUCKING & EXCAVATING; and SEESER CRANE SERVICES, INC.,**<br><br>Defendants. | **Case No. 12 C 7513**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dakota, Minnesota & Eastern Railroad Corporation's Motion to Transfer this matter to the Northern District of Illinois, Western Division, in Rockford, Illinois, pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

Plaintiff Brandon Bjoraker (hereinafter, "Bjoraker" or "Plaintiff") and his wife, Emily Bjoraker, residents of Garner, Iowa ("Plaintiffs"), brought this suit against Defendants following an incident at work that led to Bjoraker sustaining injuries. Defendant Dakota, Minnesota & Eastern Railroad Corporation ("DM&E") is a Delaware rail freight carrier that operates across several

states, including Illinois, and has its principal office in Minneapolis, Minnesota.  Defendant Advanced Tower Services (2007) Ltd. ("Advanced") builds, delivers and assembles radio towers, and has its principal place of business in Ontario, Canada.  Defendant Miller Excavating, Inc. ("Miller") is a trucking company based in Silvis, Illinois with experience in loading and hauling materials with flatbed trucks.  Defendant Seeser Storage Systems, Inc. ("Seeser") provides cranes and crane operators with experience in loading and unloading materials from flatbed trucks, and has its principal place of business in Clinton, Iowa.

Plaintiff alleges that on approximately November 1, 2011, DM&E's parent company entered into an agreement whereby Advanced would supply, deliver and assemble a steel radio tower on DM&E property.  The tower was to be used as part of DM&E's railroad signal system operations.  As part of this project, Advanced contracted with Miller to pick up a 150-foot radio tower from DM&E's Rail Yard in Kirkland, Illinois and deliver it to Genoa, Illinois.  In addition, Advanced contracted with Seeser to provide a crane and operator to assist in the unloading of the radio tower at Genoa, Illinois.

Bjoraker is employed by DM&E as an Assistant in the Signal and Communication Department.  Bjoraker claims that on December 6, 2011, he reported for duty at the DM&E Rail Yard in Kirkland, Illinois and was assigned by DM&E Supervisor John Morris to the

radio tower project in Genoa.  Bjoraker proceeded to DM&E's property at 980 Park Avenue, Genoa, Illinois.  Also present at DM&E's property that morning were Advanced employees Jacob Lundrigan ("Lundrigan"), Jessie E. Harrison ("Harrison") and Joseph L. Wideman ("Wideman"); Seeser employee Donald Burken ("Burken"); Miller employee James H. Mich ("Mich"); and Officer Kevin Heiser ("Heiser") of the Genoa Police Department.

Sections of the radio tower had been loaded onto a flatbed truck and driven by Mich from Kirkland to Genoa near the assembly site.  As the tower was being unloaded off the flatbed by Wideman and Bjoraker, a section of tower fell off of the truck and landed on Bjoraker, seriously injuring him.  Emergency personnel from Genoa-Kingston Ambulance Rescue responded to assist Bjoraker, and transported him to Saint Anthony Medical Center in Rockford, Illinois.  Plaintiff then received medical treatment from a number of health care institutions in Minnesota and Iowa.

Bjoraker and his wife filed this suit on September 9, 2012, asserting claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*.  Defendant DM&E now moves to transfer this case to the Western Division of this District.

## II.  **LEGAL STANDARD**

A district court may transfer a civil action to any district or division where the case may have been brought "for the convenience of parties and witnesses, in the interest of justice."

28 U.S.C. § 1404(a). Section 1404(a) has been applied to requests for intradistrict transfers. *See, e.g., Gulf Coast Bank & Trust Co. v. Home State Bank, N.A.,* No. 11-CV-2617, 2011 U.S. Dist. LEXIS 128359 (N.D. Ill. Nov. 4 2011) (granting § 1404 transfer to Western Division); *Navarette v. JQS Prop. Maint.,* No. 07 C 6164, 2008 U.S. Dist. LEXIS 7541 (N.D. Ill. Jan. 29, 2008) (same). A transfer under § 1404(a) is proper if (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice. *See Navarette,* 2008 U.S. Dist. LEXIS 7541 at *3. District courts have broad discretion in the interpretation and weighting of these factors. *Id.* The party moving to transfer the case bears the burden of establishing, based on the particular circumstances of the case, that the transferee forum is "clearly more convenient." Id.

### III. **ANALYSIS**

#### A. Venue

The first consideration for the transfer motion is whether the venue is proper in both the Eastern and Western Divisions. It is uncontested that the events giving rise to this action occurred in the Northern District of Illinois, so the venue is proper in this District. The parties do not dispute that the case could have been brought in either division. Indeed, because the Northern District of Illinois has no local rule requiring divisional venues, this

case may be brought in either the Eastern or Western Division. *See I&M Rail Link v. Northstar Navigation,* 21 F.Supp.2d 849, 858 (N.D. Ill. 1998).

**B. Convenience of the Parties and Witnesses**

With respect to examining the convenience of the parties or witnesses, courts look at a variety of factors including: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the relative convenience of the parties. *Navarette*, 2008 U.S. Dist. LEXIS 7541 at *4. The Court will examine each factor in turn.

*1. Plaintiff's Choice of Forum*

The plaintiff's choice of forum is usually accorded significant weight. However, the Plaintiff's choice of forum is given less weight if it is not its home forum or if it lacks substantial contact with the material events of the case. *See Navarette*, 2008 U.S. Dist. LEXIS 7541 at *4-5.

Plaintiffs live in Garner, Iowa, which is outside of both divisions of the Northern District of Illinois. Plaintiffs also do not dispute that the events that form the basis of this lawsuit occurred in the Western Division. Bjoraker was injured in Genoa, Illinois, which is in the Western Division.

Despite the lack of connection to the Eastern Division, Plaintiffs, relying upon *Barr v. National Railroad Passenger Corp.,*

No. 08-CV-2529, 2009 U.S. Dist. LEXIS 101090 (E.D. Pa. Oct. 28, 2009), argue that "[t]he Plaintiff's choice of forum in a FELA case should be given a heightened level of deference."  Pls.' Resp. at 2, ECF No. 30.  *Barr*, however, stated expressly (and repeatedly) that it was *not* ruling on whether a plaintiff's choice of venue should be treated with more deference in a FELA case.  *Id.* at *12 ("The Court need not rule on whether FELA provides Plaintiff's choices of venue with more deferential weight . . . "); *id.* at *13 ("Without ruling whether FELA cases necessarily grant more weight to Plaintiff forum choice . . . ").  More relevant for this matter, courts in this District have not extended heightened deference to a plaintiff's choice of forum in FELA cases.  As the court stated in *Diaz v. Indiana Harbor Belt Railroad Co.*, another case involving a FELA claim stemming from a railroad injury:

> Plaintiff urges the Court to deny the motion to transfer on the grounds that Plaintiff's choice of forum is entitled to deference, particularly because this is a FELA case. . . . Plaintiff overstates the emphasis to be placed on a plaintiff's choice of forum in FELA cases.  It is well settled that a 1404(a) motion to transfer is appropriate in FELA actions, and Plaintiff's choice does not automatically trump the usual 1404(a) considerations.

*Diaz v. Indiana Harbor Belt Railroad Co.*, 99 C 2247, 1999 U.S. Dist. LEXIS 16824 at *8 (N.D. Ill. Oct. 19, 1999) (granting § 1404(a) transfer of plaintiff's FELA case to Western Division); *see also, Gasda v. Indiana Harbor Belt Railroad Co.*, No. 98 C 8371,

1999 U.S. Dist. LEXIS 11979 (N.D. Ill. Jul. 30, 1999) (granting § 1404(a) transfer of plaintiff's FELA case). Thus, the Court rejects Plaintiffs' argument that their forum choice warrants increased deference because it is a FELA action.

Here, Plaintiffs are residents of Iowa, so the Eastern Division is not their home forum. The events that caused Bjoraker's injuries occurred in Genoa, Illinois, which is in the Western Division. For these reasons, the Court finds Plaintiffs' choice of forum only warrants minimal weight.

### *2. The Location of Material Events*

The next factor to consider is the location of material events giving rise to the case. This factor "becomes comparably more important when it differs from the plaintiff's choice of forum." *Gulf Coast*, 2011 U.S. Dist. LEXIS 128359 at *8. Plaintiffs do not dispute that their claim arose in the Western Division. According to the Complaint, Bjoraker was injured on DM&E's property at 980 Park Avenue, Genoa, Illinois. Genoa is in the Western Division. Indeed, Plaintiffs acknowledge that the site where Bjoraker's injuries occurred is closer to the Western Division courthouse in Rockford than to Chicago. Pls.' Resp. at 3, ECF No. 30. ("The claim arose in Genoa, Illinois. Genoa is in the Northern District of Illinois. It is 60 miles from Chicago, Illinois. Genoa is 30 miles from Rockford, Illinois.")

The Court finds that this factor favors transfer to the Western Division, as all of the material events that form the basis of Plaintiffs' claims occurred there.

### 3. *Access to Evidence*

The next factor to consider is the access to evidence at each location. DM&E contends that this factor weighs in favor of transfer because Bjoraker's injuries, Bjoraker's initial treatment and DM&E's first investigation all occurred in the Western Division. DM&E cites the affidavit of Michael Schmidt, an employee of a subsidiary of DM&E's parent company, to assert that "the majority of records relating to DM&E's investigation are not located in the Eastern Division." Def.'s Mem. in Support of Mot. to Transfer at 9, ECF No. 23. DM&E also contends that, "[t]o the extent that a jury view of the site of Plaintiff's injury and the now-constructed radio tower is necessary," it would be more convenient to arrange the visit if the case was in the Western Division. *Id.*

Plaintiffs respond that DM&E has "not assert[ed] that any books and records it needs to defend this case are unavailable in the Eastern Division." Pls.' Resp. at 3, ECF No. 30. They argue that Bjoraker has executed medical releases for DM&E to obtain the medical records from his physicians. Bjoraker has also provided medical records, bills, and Genoa ambulance and police records to DM&E. Plaintiffs contend further that records located in Rockford

or Genoa are within this Court's subpoena power, since they are within 100 miles of Chicago. Finally, Plaintiffs argue that transfer to Rockford would not make obtaining records from Iowa or Minnesota any easier.

The Court finds this factor weighs slightly in favor of transfer. Access to proof is less of a consideration in this case due to technological advancements that have lessened traditional concerns about access to evidence and the fact that this transfer motion only involves moving from one division to another in the same district. DM&E does not dispute Bjoraker's contention that he has provided his various medical records, or that records within Genoa or Rockford would be within this Court's subpoena power. And while DM&E claims none of its records regarding this matter are in the Eastern Division, a review of Mr. Schmidt's affidavit reveals that those records are not in the Western Division, either. M. Schmidt Aff. ¶ 14, ECF No. 22-1 ("The majority of DM&E's records pertaining to this matter are maintained in Minnesota, Iowa or Canada."). Those DM&E records in Minnesota and Iowa would be closer to Rockford than Chicago, however.

DM&E mentions the possibility of a jury visit to the site of the accident. While no party makes a firm assertion that a jury visit will be necessary at this point, such a visit would require less travel from Rockford to Genoa than it would from Chicago. For these reasons, this factor favors transfer.

### *4. Convenience of the Witnesses*

The next factor is the convenience of the witnesses. "The convenience of the witnesses is often characterized as the most important factor in a decision to transfer." *Gasda*, 1999 U.S. Dist LEXIS 11979 at *9. The convenience of non-party witnesses is accorded greater weight than the convenience of party witnesses. *Gulf Coast Bank*, 2011 U.S. Dist. LEXIS 128359 at *7. When evaluating the convenience of the witnesses, consideration may include the number of potential witnesses located in the two venues, the expense of transportation, the nature and necessity of the witnesses' testimony and whether the witnesses can be compelled to testify. *See Medi USA L.P. v. Jobst Inst., Inc.,* 791 F.Supp. 208, 211 (N.D. Ill. 1992).

At this stage in the case, the Court considers the eye witnesses of the incident that caused Mr. Bjoraker's injuries to be significant. According to DM&E, there appear to be six such individuals: Joseph L. Wideman, Jesse E. Harrison, Jacob Lundrigan, James Mich, Donald Burken and Officer Kevin Heiser. M. Schmidt Aff. ¶ 11, ECF No. 22-1. All but Officer Heiser are party witnesses, as they are employees of the Defendants. The convenience of party witnesses is given less consideration. However, while Officer Heiser (a resident of Genoa) would be within this Court's subpoena power, the Western Division would be a closer venue for him.

None of the parties have identified any of Bjoraker's treating physicians that they may call at trial, but the Court will assume some of them may be witnesses. Bjoraker received medical treatment from a number of non-party health care providers in addition to the emergency medical personnel from Genoa-Kingston Ambulance Rescue who first came to his aid. These providers include: (1) Saint Anthony Medical Center in Rockford, Illinois; (2) Saint Mary's Hospital in Rochester, Minnesota; (3) Hancock County Memorial Hospital in Britt, Iowa; (4) Mayo Clinic in Rochester, Minnesota; (5) Accelerated Rehab in Forest City, Iowa; and (6) Forest Park Clinic in Garner, Iowa. M. Schmidt Aff. ¶ 9, ECF No. 22-1. It is likely that the emergency medical professionals from Genoa or those physicians at Saint Anthony Medical Center, while within this Court's subpoena power, would find it more convenient if the case was in the Western Division. In addition, the Court sees no reason why the Western Division would be any more inconvenient for those health care professionals in Iowa and Minnesota than the Eastern Division.

DM&E also identified two more of its employees, Bjoraker's supervisor John Morris, a resident of Missouri, and David Vaughn, a resident of Iowa, as potential witnesses with "knowledge of Mr. Bjoraker's employment with DM&E." M. Schmidt Aff. ¶ 6, ECF No. 22-1. These are party witnesses who apparently did not witness

Bjoraker get injured, and the Court gives less weight to their consideration.

The convenience of the witnesses favors transfer. None of the potential witnesses appear to live in the Eastern Division. Many are employees of the Defendants, who have incentive to make sure they attend trial no matter where it occurs, and whose convenience is given less weight. But at least one non-party eye witness to the incident that injured Bjoraker, Officer Heiser, and the non-party medical providers in Rockford and Genoa that treated Bjoraker's injuries immediately after the injuries, would find appearing in the Western Division more convenient despite being within this Court's subpoena power. As such, this factor weighs in favor of transfer.

### 5. *Relative Convenience of the Parties*

The next consideration is the relative convenience of the parties. In considering the relative convenience of the parties, the court should consider where the parties reside and their respective abilities to bear the expense of a trial in a particular forum. *Braddock v. Jolie*, No. 11-CV-8597, 2012 U.S. Dist. LEXIS 83598 at *6 (N.D. Ill. Jun. 15, 2012). A court will not transfer a case if doing so will simply shift the inconvenience from one party to another. *Medi USA,* 791 F.Supp. at 211. DM&E claims that the Western Division is a more convenient forum for it because "the bulk of DM&E's operations are closer [to] the Western Division and

the DM&E supervisors and employees likely to have knowledge of Plaintiff's injury work in the Western Division." Def's. Mem in Support of Mot. to Transfer at 6, ECF No. 23. DM&E also claims that the Western Division would be more convenient for its co-Defendants, despite none of them being located there.

Plaintiffs respond that, despite Rockford being closer to their residence than Chicago, it would be more convenient for them to fly to Chicago rather than drive to Rockford because Bjoraker has problems sitting for lengths of time. Bjoraker Aff. ¶¶ 8-10, ECF No. 31. His preference is to fly from Rochester, Minnesota to Chicago instead of driving the 300 miles from their home to Rockford. *Id.* Plaintiffs also claim that, "[a]ll of the attorneys in this case have offices in Chicago, Illinois. Travel time to Rockford is not free." Pls.' Resp. at 4, ECF No. 30. DM&E responds that Plaintiffs' argument is disingenuous, since they could have filed suit somewhere closer to their home if they were concerned about Bjoraker sitting for prolonged periods of travel. DM&E argues that Plaintiffs' true motivation for filing in the Eastern Division is because their attorney is in Chicago.

The Court finds this factor favors transfer. The Court agrees with DM&E that it would be inappropriate for Plaintiffs to bring suit in this Division solely for the convenience of their attorney. Although courts consider a variety of factors in determining whether to transfer a case, the convenience of the attorneys is not

one of them.  *See Bank of Am., N.A. v. Illumination Station, Inc.*, No. 10 C 3061, 2011 U.S. Dist. LEXIS 46734 at 13-14 n.5 (N.D. Ill. May 2, 2011).  While the Court accepts (and is sympathetic to) Bjoraker's sworn statement that he has difficulty sitting for long stretches of time, it fails to see how his proposed journey to Chicago would save him any discomfort.  Plaintiff proposes driving to Rochester Minnesota (approximately 111 miles from his home in Iowa), flying from Rochester to Chicago, and then traveling from O'Hare Airport to the Court in downtown Chicago.  The Court does not see that as being a more convenient, or inexpensive, trek than the 300 mile drive from Garner to Rockford.

In addition, DM&E claims transfer will be more convenient for the other Defendants.  DM&E argues that Miller (in Silvis, Illinois), and Seeser (in Clinton, Iowa) are both closer to Rockford than Chicago.  That is true, and should make the Western Division more convenient for both of those Defendants.  DM&E did not address whether the Western Division would be more convenient for the Canadian Defendant, Advanced.  As Advanced is based in Ontario, either the Western or Eastern Division is likely an inconvenient forum for it.  However, the Court sees no reason why trial in the Western Division would be more inconvenient for it than the Eastern Division.

Transferring this case to the Western Division thus does not appear to be an instance of shifting inconvenience from one party

to another. Instead, it would appear to be more convenient for nearly all of the parties.

### C. Interests of Justice

In determining which venue best serves the interests of justice, courts consider (1) the familiarity of the courts with the applicable law; (2) the speed at which the case will proceed to trial; and (3) the desirability of resolving controversies in the respective locales. *Navarette*, 2008 U.S. Dist. LEXIS 7541 at *7. However, these considerations are given less weight in the case of an intradistrict transfer. *Id.* at *7-8.

Courts in both the Eastern and Western Divisions are equally familiar with the applicable law to be applied, and are equally capable of resolving the case. So two of these factors are neutral. As for interest in resolving the controversy, as previously discussed, the events that caused Bjoraker's injuries occurred in the Western Division.

While the Court gives these factors less weight because DM&E seeks an intradistrict transfer, it finds that one of these "interests of justice" factors favors transfer, while the other two are neutral.

In sum, this action has far more connection to the Western Division than this forum. The injuries occurred in the Western Division. No witnesses have been identified that reside in the Eastern Division. Most of the Defendants and sources of proof are

located closer to the Western Division.  Plaintiffs have not pointed to any factor favoring the Eastern Division except their preference to litigate here, and that preference is given less deference because it is not their home division or the location where the events giving rise to their claim occurred.  DM&E has therefore met its burden of showing that such a transfer to the Western Division would be "clearly more convenient" based on the facts of this case.  *See Navarette,* 2008 U.S. Dist. LEXIS 7541 at *3.

## IV. CONCLUSION

For the reasons stated herein, DM&E's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is granted.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Date:3/12/2013